## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTIAN J. MUNDIS, | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **NO.** |
| | ) | |
| JPMORGAN CHASE & CO., | ) | |
| a Delaware corporation, | ) | **TRIAL BY JURY DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

1.      This is an employment case under the Americans with Disabilities Act, 42 U.S.C.

§ 12101 et seq. ("ADA"), and the Delaware Workers' Compensation Improvement Act seeking

damages, injunctions, and other relief for a legally blind Project Manager arising from

Defendant's 1) failure to accommodate him despite the fact that Defendant has had notice of his

disability since April 2016, 2) placement of him on a Performance Improvement Plan after he

reported his supervisor's discriminatory behavior towards him and after he initiated a workers'

compensation claim, and 3) subjection of him to a discriminatory, hostile, and abusive work

environment which was created, approved, and tolerated by management because of his

disability.

## I.  JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and

1343; the ADA, 42 U.S.C. § 12101 et seq.; and the Civil Rights Act of 1991, 42 U.S.C.

§ 1981a(a)(2).

3.      The federal causes of action arise under the ADA.

4.      The cause of action under state law in Count VI arises under the Delaware

Workers' Compensation Improvement Act, 19 Del. C. § 2365.  This Court has jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367, which provides for supplemental jurisdiction.

5.      All conditions precedent to jurisdiction have occurred.  Plaintiff timely filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 10, 2017, and he has filed this action within 90 days of receiving a right-to-sue letter dated October 31, 2017.

6.      Venue is proper in this district because it is the judicial district where Plaintiff was employed, the unlawful employment practices complained of occurred, and the claims arose.

## II.  THE PARTIES

7.      Plaintiff Christian J. Mundis is disabled and a resident of Delaware.  He is employed by Defendant as a Project Manager II.  At all times material hereto, he has been a diligent, loyal, and capable employee.

8.      JPMorgan Chase & Co. is a Delaware corporation.  Defendant is a financial institution.  At all times material hereto, Defendant had over 500 employees.  Its agent for service of process is the Corporation Trust Company with a registered address of Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

## III.  FACTS GIVING RISE TO THE ACTION

**A.      Plaintiff's Employment History.**

9.      Plaintiff has over fifteen years' experience in Business, Program, and Project Management.  Plaintiff initially worked for Defendant as a contractor beginning on or about December 7, 2013, until August 11, 2014.  Plaintiff has worked for Defendant as an employee from August 11, 2014, to the present.

2

10.     In March 2016, Kathleen Leahy became Plaintiff's manager.

11.     Plaintiff's performance was rated Meets Expectations on eleven consecutive evaluations (six quarterly, two mid-year, and three annual) including his current manager Kathleen Leahy's July 2016 mid-year review, October 2016 3rd quarter review, January 2017 annual evaluation, and January 2018 annual evaluation of him.

12.     Plaintiff earned four Incentive Awards for 2014, 2015, 2016, and 2017, and other awards.  Plaintiff received salary increases for 2015, 2016, and 2017.

**B.     Plaintiff's Disability and Request for Accommodations.**

13.     Plaintiff has Stargardt's Disease, a degenerative eye disease which caused him i) loss of visual acuity and central vision, ii) legal blindness in his right eye in August 2015, and iii) legal blindness in his left eye in mid-2016.

14.     With help from Delaware's Division of Visual Rehabilitation ("DVR") and Division of Visual Impairment ("DVI"), Plaintiff identified and disclosed his disability to Defendant and asked for reasonable accommodations in April 2016, including higher definition computer monitors and effective, screen reading software.

**C.     Defendant's Discriminatory Decisions and Reasons Provided.**

**1.  Continuing Failure to Provide a Working Accommodation for Over 21 Months.**

15.     In response to Plaintiff's accommodation request, Defendant on April 20, 2016, initially provided Plaintiff only a demo version of ZoomText with Speech software and not a fully licensed version until mid-August 2016.

16.      Furthermore, rather than a brand new, functioning computer, Defendant from April 20, 2016 to the present provided Plaintiff at least three different lap top computers

(including two refurbished ones) and at least one refurbished desk top computer.  At least two were damaged.  At least four were faulty and unable to run the ZoomText software without repeatedly freezing or crashing, often requiring Plaintiff to reboot his system four to five times daily.  Many other computer issues (including issues with Skype, Outlook, and Microsoft Office) caused significant down time that decreased Plaintiff's daily productivity.

17.     Plaintiff documented and informed i) Leahy in their weekly meetings since August 2, 2016, ii) Defendant Health Advocate Maureen Kemble, and iii) the Technical Operations Support Team of the equipment requests since April 20, 2016, and the problems with these ineffective accommodations.

18.     Also, several of Defendant's staff members, including employees from Technical Operations and the Office of Disability Inclusion ("ODI"), acknowledged the ZoomText accommodation is not working.

19.     Though Plaintiff previously was told that over 100 Defendant employees use ZoomText, an ODI Technologist admitted to Plaintiff in April 2017, "Very few people [at Defendant] have ZoomText, and we struggle with it."  He informed Plaintiff it does not work on a refurbished computer and requires a new one, correctly specified or overspecified.

20.     Also, the ADA Lead for Card Functionality Online and Mobile Team in San Francisco Herman Wald admitted, "ZoomText is problematic with speech (screen reading functionality)."

21.      Also, in a September 2016 e-mail, Technical Operations Manager Stephen Norman rejected former contract HP Lead Jermiah Davis' recommendation for Defendant to purchase a new machine for Plaintiff.

22.     Also, when Plaintiff requested a $150 video phone with one touch join to conference calls and integrated audio between phone and computer recommended by DVR consultant Debra Young ("the DVR consultant"), Leahy denied Plaintiff's request and told him he would just have to wait for it.  To date, Defendant has not provided it.

**2.  Manager Issued an Unjustified PIP Instead of a Working Accommodation.**

23.     On April 28, 2017, Plaintiff filed an Employee Relations complaint ("internal complaint") of Leahy's discriminatory behavior toward him described in Part D.2 below.

24.     Then just one month after Plaintiff's internal complaint, Leahy issued him a Performance Improvement Plan ("PIP") on May 31, 2017.  In the PIP, Leahy falsely accused Plaintiff of poor performance.  The PIP contradicted his entire performance record including Plaintiff's January 2017 and January 2018 evaluations.

25.     When Plaintiff informed Leahy of problems with the accommodation software necessary to do his job, she dismissed and mischaracterized that problem as an "excuse," numerous times orally and on Plaintiff's PIP.

26.     Then, less than a month after receiving a cease and desist letter from Plaintiff's attorney on July 6, 2017 ("the notice"), Defendant told Plaintiff it was rescinding his unjustified PIP on August 2, 2017 ("the rescission").  Assistant General Counsel Jamie Friedman confirmed the rescission in an August 7, 2017 e-mail.

27.      However, Leahy and her supervisor, Director Angela Lairson, two persons with no known disabilities, continue retaliation against Plaintiff as described in Parts D.3.b and 4 below.

28.     To date, Defendant has not provided Plaintiff working, reasonable

accommodations necessary to perform his job's essential functions.

**D.     Discrimination and Retaliation Under the ADA.**

**1.  Direct Evidence of Decision Maker's Disability Bias.**

29.     Previously, Leahy was told Plaintiff had a condition that made him legally

blind.  Then, in an April 13, 2017 Skype message, Leahy told Plaintiff to connect with a

co-worker before a pending meeting so the co-worker understood why she was invited to the

meeting and was not "blindsided[.]"

**2.  Decision Maker's Demonstrated Antagonism.**

30.     On April 28, 2017, Leahy exploded on Plaintiff with profanity, telling him it was

time for him to "Shit or get off the pot."

31.     Though she is Plaintiff's immediate supervisor, Leahy never once asked Plaintiff

how he was doing i) when he became legally blind in the second eye in mid-2016; ii) when he

was in an October 14, 2016 car accident; or iii) when he sustained a May 24, 2017 workplace

injury.

32.     In the PIP, Leahy unfairly criticized Plaintiff i) for not listening because his

condition requires him to use his peripheral vision by turning his head sideways rather than

making direct eye contact with the person speaking and ii) for interrupting her because Plaintiff

sometimes responds prematurely because his legal blindness makes it difficult to recognize facial

gestures a speaker makes when completing her statement.

33.     When issuing Plaintiff the May 31st PIP in paper form with fine print and small

text, Leahy demanded of Plaintiff, "Read it [the PIP aloud]!"  This was on a call with Human

Resources' Del Kepler who confirmed he heard her asking Plaintiff to read it aloud.  With no

usable, electronic format or software needed to read it, Plaintiff said he can't read the paper, and

Leahy snatched it from him and read it aloud.

34.     Even after Defendant rescinded the PIP she issued to Plaintiff, Leahy's

antagonism toward Plaintiff continues.

### 3. Policies Violated and Practices Ignored.

#### a. Manager Did Not Participate in Interactive Process, and Defendant Failed to Provide Accessible and Assistive Technologies.

35.     Defendant's Policy for Accommodating Disabilities ("the Policy") promises

Defendant i) "is committed to providing reasonable accommodations [including] accessible

and/or assistive technologies and communications," and ii) "will participate in an interactive

process with the employee and manager ... ."

36.     Defendant's prior shortcomings in working with the disabled (including Plaintiff)

led it to create ODI in June 2016, and issue an April 2017 policy letter regarding inclusion of

disabled employees in the workplace.

37.     The policy letter requires Defendant, to "[c]ontinually look for ways to eliminate

barriers with processes and systems that enable ... employees with disabilities to obtain the

reasonable 'accommodations' they require to perform their essential job roles[,]" "establish

reasonable 'accessibility' standards for all employees with disabilities as it pertains to

technology, real estate, and work environments[,]" and "welcome qualified individuals to apply

for positions at [Defendant.]"

38.     Despite well over 100 separate, ticketed requests to address faulty hardware

and/or software, Plaintiff still does not have the appropriate technologies to perform his job's

essential functions.

39.     Also, Plaintiff's manager Leahy never participated in the interactive process.

40.     Defendant has a Performance, Discipline and Workplace Concerns Policy that makes an employee ineligible to transfer or apply for another position within 60 days of receiving a written warning.  Thus, by failing to provide effective accommodations for Plaintiff and then disciplining him with an unjustified PIP, Defendant and Leahy made Plaintiff ineligible to apply from May 31, 2017, to July 30, 2017, for its other available positions.

**b.  Continuing Retaliation After Both Disability Complaints.**

41.     The Policy also "strictly prohibits any retaliation against ... [a]ny person who requests an accommodation [or] makes a good faith complaint under this policy ... ."

42.     After Leahy failed to participate in the interactive process and exploded on Plaintiff with profanity and Defendant failed to provide an effective accommodation, Plaintiff made a good faith complaint under the Policy to Employee Relations on April 28, 2017, of Leahy's discriminatory behavior.

43.     In response, Leahy issued Plaintiff the unjustified PIP on May 31, 2017, just one month after his internal complaint.

44.     After Defendant received the notice on July 6, 2017, Lairson discussed Plaintiff's confidential disability and pending accommodations in an open cubicle within earshot of several of Plaintiff's co-workers on August 2, 2017.

45.     After learning Plaintiff was without working computer equipment on August 4, 2017, Leahy, with no prior notice, made an impossible request that Plaintiff create and submit to her a document the very next day.

8

46.     On August 8, 2017, Lairson met with Plaintiff for a status report on some of his work.  When Plaintiff informed her of communication gaps between Human Resources and the Technologist, she called several others to try to get them to refute Plaintiff's accurate statement of the events.

47.     On August 23, 2017, Lairson mocked Plaintiff's inability to read a document with small print without the necessary accommodation.  In an open cubicle within earshot of at least one of Plaintiff's co-workers, Lairson said to Plaintiff, "You can't see that?" at least three times in an increasingly louder voice.

48.     Plaintiff was visibly shaking and clearly upset by Lairson's harassment of him.

**4.     Prior and Continuing Discrimination.**

49.     Previously, Plaintiff was assigned just four to five smaller projects in 2016.  Then, Leahy assigned Plaintiff more projects than ever (nine larger ones in February 2017, and a tenth on August 8, 2017).

50.     In November 2016, Plaintiff's former supervisor admitted that Leahy indicated in a Senior Project Manager's meeting that she would "load Christian [Mundis] up [with projects]."

**5.     Factors Usually Considered Were Ignored.**

51.     While the health of many, non-disabled peers' projects is labeled "Red," "Amber," or "Green," all of Plaintiff's projects are "Green," and most are committed and implemented successfully.

52.     Recently in 2016, a CEO from Card Services recognized by e-mail Plaintiff's work on the "Always On Offers," an extremely profitable project.

53.     Also, Plaintiff never was required to travel before his disability disclosure,

9

accommodation request, and internal complaint.

54.     Then on May 9, 2017, Defendant and Leahy suddenly required Plaintiff to fly to California.

55.     For another trip, Leahy asked if Plaintiff would "drive or take a train to Jersey City" for an early morning, all-day meeting instead of providing Plaintiff a hotel accommodation the night before.  She knew Plaintiff cannot drive and navigating, many unfamiliar train connections during the morning rush hour would be very challenging for anyone with his disability.

56.     Plaintiff was away from the Wilmington office at least 20% of the time for which his performance was criticized in the unjustified PIP, without a desk top computer and with a workload that more than doubled.

57.     Yet, Leahy disregarded all of this in issuing Plaintiff the unjustified discipline, allegedly for performance.

**6.     Unfavorable Treatment for Similarly Situated, Disabled Peer ("KLR").**

58.     KLR and Plaintiff are the only remaining non-senior employees in Leahy's group.

59.     KLR is a disabled employee who previously sustained a brain injury in a car accident.

60.     Shortly after KLR returned to work from Long Term Disability Leave, Leahy issued her a PIP within one day of Plaintiff's PIP.

61.     Upon information and belief, Leahy never issued a PIP to any similarly situated, non-disabled peers of KLR and Plaintiff.

### 7.   Distinct Lack of Employee Criticism.

62.     Before Plaintiff's internal complaint, he received no PIPs, written discipline, negative evaluations, or documented performance criticism.

### E.   Retaliation Under the Delaware Workers' Compensation Improvement Act.

63.     During the workday on or about May 24, 2017, Plaintiff slipped and fell on a flooded, polished, ceramic floor in a first floor restroom at Defendant's Concord Pike site.

64.     As a result, Plaintiff injured his left shoulder, arm, wrist, and ankle ("the workplace injury").

65.     The workplace injury caused him to miss two days of work.

66.     On the same day of the workplace injury, Plaintiff initiated a workers' compensation claim.

67.     Just one week later on or about May 31, 2017, the duly authorized agent of Defendant, Kathleen Leahy, issued Plaintiff the PIP.

## V.  INJURIES AND DAMAGES

68.     As a direct and proximate cause of Defendant's actions including, but not limited to, the continuing failure to accommodate Plaintiff, the unjustified PIP, and the ongoing discrimination and retaliation by management, Plaintiff has suffered emotional distress; humiliation and embarrassment; injury to reputation; and other pecuniary and non-pecuniary losses and permanent injuries.

69.     Plaintiff also has been required to pay for medical visits and medications which he otherwise would not have been required to pay. Plaintiff is still undergoing continuing medical treatment requiring medication, and his injuries are permanent.

## VI.  OTHER ALLEGATIONS REGARDING THE DEFENDANT'S CONDUCT

70.    The actions of the Defendant were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federally protected rights.  Defendant either knew or showed a negligent or reckless disregard for the matter of whether its conduct violated federal rights.  Its actions were outrageous and taken with evil or improper motive, in bad faith, out of personal animus or motivated by bias and without any reasonable grounds to support them.  Defendant's actions were wanton and malicious or taken with reckless indifference to legally protected rights under federal law.

71.    Plaintiff's disability (Stargardt's Disease) made a difference in all actions adverse to him.

## COUNT I
## FAILURE TO ACCOMMODATE (ADA)

72.    Plaintiff repeats and realleges all paragraphs set out above.

73.    Plaintiff has a disability within the meaning of the ADA.

74.    The effects of Plaintiff's disability (Stargardt's Disease) significantly limits him in the major life activities of seeing, reading, and working.

75.    Alternatively, Plaintiff is disabled within the meaning of the ADA because he has a record of such impairment because he identified his condition to Defendant in April 2016.

76.    Plaintiff is a qualified individual able to perform the essential functions of his position of Project Manager II with a reasonable accommodation.

77.    Defendant received notice of Plaintiff's disability and was informed of the need for an accommodation of Plaintiff due to his disability in April 2016.

78.     Providing Plaintiff with a new computer with higher definition monitors; effective, screen reading software that does not crash or cause the computer to freeze; and a video phone with one touch joint to conference calls and integrated audio between phone and computer as recommended by the DVR consultant would have been reasonable because the costs of those accommodations would not have clearly exceeded its benefits.

79.     Defendant has failed to accommodate Plaintiff with a working, effective accommodation, including, but not limited to, a new computer with higher definition monitors; effective, screen reading software that does not crash or cause the computer to freeze; and a video phone with one touch joint to conference calls and integrated audio between phone and computer as recommended by the DVR consultant.

80.     Additionally, Plaintiff's supervisor, Kathleen Leahy, has not engaged in the interactive process with Plaintiff.

## COUNT II
## RETALIATION FOR OPPOSING ILLEGAL PRACTICES (ADA)

81.     Plaintiff repeats and realleges all paragraphs set out above.

82.     Plaintiff opposed practices made illegal by the ADA by filing an Employee Relations Complaint on April 28, 2017, of his supervisor's discriminatory behavior towards him.

83.     Defendant has retaliated against him for his opposition by subjecting him to materially adverse actions after his complaint.  The materially adverse actions have included: i) Defendant's issuance of the May 31, 2017 PIP; ii) Defendant's agent Angela Lairson's discussion of Plaintiff's disability and pending accommodations in an open cubicle within earshot of several of Plaintiff's co-workers; iii) Leahy's impossible request that Plaintiff create

and submit a document to her the very next day when Plaintiff did not have working computer equipment; and iv) Defendant's continued failure to provide Plaintiff with a working, effective accommodation.

84.     There is a causal connection between Plaintiff's opposition and Defendant's retaliatory conduct.  Defendant issued Plaintiff a PIP just one month after Plaintiff's internal complaint.  Defendant's agent Kathleen Leahy's retaliatory conduct occurred within four months of Plaintiff's internal complaint.  Any non-retaliatory reason given by the Defendant is a pretext for retaliation for opposing disability discrimination in the workplace.

85.     Any reason offered by Defendant is unworthy of credence because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that the Defendant did not act for the asserted non-discriminatory reason.

86.     Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's protected activity.  In the alternative, any reasons provided by the Defendant for the treatment of Plaintiff are pretextual and a cover up for retaliation for opposing disability discrimination in the workplace.

87.     Plaintiff's rights were violated under the ADA because he has been subjected to materially adverse actions in retaliation for opposing disability discrimination.

## COUNT III
## DISPARATE TREATMENT - MIXED MOTIVE (ADA)

88.     Plaintiff repeats and realleges all paragraphs set out above.

89.     Plaintiff suffered an adverse employment action when Defendant denied him a reasonable accommodation.  Alternatively, Plaintiff suffered an adverse employment action as a result of discrimination when Defendant and his manager Kathleen Leahy issued him a PIP on May 31, 2017.

90.     Plaintiff's Stargardt's Disease was a motivating factor in Defendant's decision to deny him a reasonable accommodation.  Plaintiff's Stargardt's Disease played a part or played a role in Defendant's decision to deny him a reasonable accommodation.

91.     Alternatively, Plaintiff's Stargardt's Disease was a motivating factor in Defendant's decision to issue him the PIP.  Plaintiff's Stargardt's Disease played a part or played a role in Defendant's decision to issue him the PIP.

92.     Defendant has intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of Plaintiff's employment because of his disability.

93.     Defendant violated Plaintiff's rights under the ADA, 42 U.S.C. § 12112(a).

94.     As a direct and proximate result of Defendant's willful and wrongful discriminatory actions, Plaintiff has suffered the damages listed in Part V above.

95.     Plaintiff's statutory right to be free of disability discrimination in the workplace has been denied under 42 U.S.C. § 12112(a).

## COUNT IV
## DISPARATE TREATMENT - PRETEXT (ADA)

96.     Plaintiff repeats and realleges all paragraphs set out above.

97.     Plaintiff's Stargardt's Disease was a determinative factor in Defendant's decision to deny him a reasonable accommodation.

98.     Alternatively, Plaintiff's Stargardt's Disease was a determinative factor in Defendant's decision to issue him the PIP.

99.     Any stated legitimate non-discriminatory reason offered by the Defendant for its actions is a pretext for intentional discrimination because of disability.  Any reason offered by the Defendant is unworthy of credence because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that Defendant did not act for the asserted non-discriminatory reason.

100.    Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's disability.  In the alternative, any reasons provided by Defendant for its treatment of Plaintiff are pretextual and a cover up for disability discrimination.

101.    Defendant violated Plaintiff's rights under the ADA, 42 U.S.C. § 12112(a).

102.    As a direct and proximate result of Defendant's willful and wrongful discriminatory actions, Plaintiff has suffered the damages listed in Part V above.

103.    Plaintiff's statutory right to be free of disability discrimination in the workplace

has been denied under 42 U.S.C. § 12112(a).

## COUNT V
## HARASSMENT - HOSTILE WORK ENVIRONMENT (ADA)

104.    Plaintiff repeats and realleges all paragraphs set out above.

105.    Plaintiff has been subjected to a hostile work environment by Defendant's

managers, Kathleen Leahy and Angela Lairson.

106.    Leahy exploded on Plaintiff with profanity, telling him it was time for him to

"Shit or get off the pot;" told Plaintiff to connect with a co-worker prior to a meeting so that the

co-worker would not be "blindsided;" admittedly "load[ed] up" Plaintiff with ten projects in

2017, though she only assigned him four to five smaller projects previously in 2016; issued him a

PIP for alleged performance issues; unfairly criticized Plaintiff in the PIP for not listening

because his condition requires him to use his peripheral vision by turning his head sideways

rather than making direct eye contact with the person speaking and for interrupting her because

Plaintiff sometimes responds prematurely because his legal blindness makes it difficult to

recognize facial gestures; demanded Plaintiff read his PIP aloud despite the fact that it was in

paper form with fine print and small text; and with no prior notice, made an impossible request

that Plaintiff create and submit to her a document the very next day after learning Plaintiff was

without working computer equipment.

107.    In addition, Lairson discussed Plaintiff's confidential disability and pending

accommodations in an open cubicle within earshot of several of his co-workers and called

several others to try to get them to refute Plaintiff's accurate statement of events when during a

status report, he informed her of communication gaps between Human Resources and the

Technologist.

108.   All of the aforementioned actions of Leahy and Lairson were taken because of Plaintiff's disability.

109.   Leahy's and Lairson's conduct was not welcomed by Plaintiff.

110.   Leahy and Lairson's conduct was motivated by the fact that Plaintiff has a disability or sought an accommodation for that disability.

111.   Leahy and Lairson's conduct was so severe or pervasive that a reasonable person with Stargardt's Disease would find Plaintiff's work environment to be hostile or abusive.

112.   Plaintiff believed his work environment to be hostile or abusive as a result of Leahy's and Lairson's conduct.

113.   Because of his disability, Plaintiff is suffering intentional discrimination which is severe or pervasive, regular and continuous.  This has detrimentally affected him, and it would do so for a reasonable person with the same or similar disability in his position.

114.   The totality of the circumstances proves the existence of a hostile or abusive working environment severe enough to affect the psychological stability of a legally blind person with Stargardt's Disease.

115.   The acts identified herein are severe and pervasive, regular, and continuous, and they have created an intimidating, hostile, or offensive work environment.

116.   Under all the circumstances, Plaintiff has been illegally discriminated against in the terms and conditions of employment, and otherwise harassed by a discriminatory, hostile, and abusive work environment which has been created, approved, and tolerated by management because of his disability.

117.     Plaintiff's statutory right to be free of disability discrimination in the workplace has been denied under the ADA.

## COUNT VI
## RETALIATION FOR WORKERS' COMPENSATION CLAIM (19 Del. C. § 2365)

118.     Plaintiff repeats and realleges all paragraphs set out above.

119.     Plaintiff claimed or attempted to claim workers' compensation benefits from his employer on May 24, 2017.

120.     Seven days later, Defendant took an adverse employment action against Plaintiff when it issued him a PIP on May 31, 2017.

121.     There is a causal connection between Plaintiff's workers' compensation claim and the Defendant's issuance of the PIP.

122.     Any non-retaliatory reason given by the Defendant is a pretext for retaliation for Plaintiff exercising his rights under the Delaware Workers' Compensation Improvement Act.

123.     Any reason offered by Defendant is unworthy of credence because Plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that the Defendant did not act for the asserted non-retaliatory reason.

124.     Alternatively, Plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was Plaintiff's protected activity.  In the alternative, any reasons provided by the Defendant for the treatment of Plaintiff are pretextual and a cover up for retaliation for Plaintiff exercising his rights under the Delaware Workers' Compensation Improvement Act.

125.    Plaintiff's statutory right to be free from retaliation has been denied under the

Delaware Workers' Compensation Improvement Act, 19 Del. C. § 2365.

**WHEREFORE**, Plaintiff prays that the Court:

(a)    Enter a declaratory judgment declaring the acts of Defendant to be a violation of

Plaintiff's statutory rights;

(b)    Issue a mandatory injunction to provide Plaintiff with the reasonable

accommodations necessary to perform the essential functions of his position;

(c)    Enter judgment against Defendant for compensatory damages for emotional

distress; humiliation and embarrassment; injury to reputation; and other pecuniary and

non-pecuniary losses and permanent injuries for Defendant's failure to accommodate, retaliation,

and discrimination of Plaintiff in the terms and conditions of his employment;

(d)    Enter judgment against Defendant for punitive damages for its deliberate,

intentional, willful, purposeful, and/or knowing violation of Plaintiff's legally protected rights

under federal law;

(e)    Order Defendant to pay a civil penalty to the Workers' Compensation Fund in the

maximum amount allowable under 19 Del. C. § 2365;

(f)    Issue a permanent injunction requiring Defendant to notify everyone who

learned of Defendant's treatment of Plaintiff that its conduct was illegal;

(g)    Award Plaintiff attorneys' fees and costs;

(h)    Award pre-judgment and post-judgment interest; and

(i)    Require such other and further relief as the Court deems just and proper under the

circumstances.

20

**LaROSA & ASSOCIATES LLC**

*/s/ John M. LaRosa*
**JOHN M. LaROSA, ESQ. (Bar No. 4275)**
**ERIN L. MORTIMER, ESQ. (Bar No. 6321)**
1225 King Street, Suite 802
Wilmington, DE 19801-3426
(302) 888-1290
JLR@LaRosaLaw.com
Associate@LaRosaLaw.com

Dated: January 29, 2018                     Attorneys for Plaintiff